**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRINITY EPISCOPAL CHURCH, AMBLER<br>708 S. Bethlehem Pike<br>Ambler, PA 19002<br><br>v.<br><br>UNITED FIRE & CASUALTY COMPANY<br>118 Second Avenue, S.E.<br>P.O. Box 73909<br>Cedar Rapids, IA 52407 | DOCKET NUMBER: |

## CIVIL ACTION COMPLAINT

### I.     PARTIES

1.     Plaintiff, TRINITY EPISCOPAL CHURCH, AMBLER, is a religious institution located at the address set forth above.

2.     Defendant, UNITED FIRE & CASUALTY COMPANY, is a corporation duly organized and existing which is licensed to issue policies of insurance in the Commonwealth of Pennsylvania and maintains its principal place of business at the address set forth above.

3.     At all times material hereto, Defendant was acting either individually or through its duly authorized agents, servants, workmen or employees, who were acting within the course and scope of their employment and on the business of said employer.

### II.     JURISDICTION

4.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different States.

## III.  CAUSES OF ACTION, DAMAGES AND RELIEF REQUESTED

5.  Defendant in its regular course of business issued to Plaintiff a policy of insurance, policy number 60506785 (hereinafter referred to as "the policy"), covering Plaintiff's premises located at 708 S. Bethlehem Pike, Ambler, PA 19002 (hereinafter referred to as "the property").   See a true and correct copy of the policy in possession of Plaintiff, attached hereto, made part hereof and marked Exhibit "A".

6.  Plaintiff paid a valuable premium for the policy.

7.  In addition, Plaintiff purchased "EXPANDED COVERAGE" from Defendant. Such coverage affords a higher and more desirable level of coverage for an additional premium.

8.  The policy affords coverage for "fortuitous direct physical loss, not otherwise excluded or limited in [the] policy."

9.  The policy is known in the insurance industry as an "all risks" policy and covers all losses to the property unless the policy contains specific, precise and unambiguous language that states that a particular type of loss is excluded, limited or not covered.

10.  The policy was written by Defendant and Plaintiff had no choice as to its terms.

11.  Plaintiff faithfully paid to Defendant the required premiums to keep the policy in full force and effect.

12.  By purchasing and paying for the policy, Plaintiff had the reasonable expectation that in the event a fortuitous direct physical loss to the property occurred, Defendant would honor its obligations under the policy to provide full and fair monetary

benefits to Plaintiff so that all damage to the property could be repaired and/or replaced and that Plaintiff could continue to serve its congregation.

13.     On or about July 6, 2020, while the policy was in full force and effect, Plaintiff suffered a fortuitous direct physical loss to the insured premises caused by water, which entered the property during a wind and hail storm (hereinafter referred to as "the loss"), resulting in catastrophic damage to the insured building in an amount currently being determined.

14.     As a further result of the loss, Plaintiff suffered damage and loss as set forth in the spreadsheet totaling $785,718.81, attached hereto, made part hereof, and marked as Exhibit "B".

15.     As a further result of the loss, Plaintiff will continue to incur certain expenses, including, but not limited to engineering fees and storage fees, which will be determined and produced during discovery.

16.     Prior to the loss, the property operated as a fully functional church with all accompanying activities.

17.     Following the loss, the church has been unable to function in any capacity on the property and what was once a beautiful church, is now a completely non-functional shell of a building.

18.     Notice of Plaintiff's covered loss was given to Defendant in a prompt and timely manner and Plaintiff has done and otherwise performed all things required of Plaintiff under the policy, including cooperating with Defendant's investigation; mitigating damages where reasonable, required and/or possible; providing Defendant with all available information and complying with all conditions precedent.

19.     Defendant, despite demand for benefits under its policy of insurance has failed and refused to pay to Plaintiff those benefits due and owing under the policy.

20.     Solely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the policy, as well as the mishandling of Plaintiff's claim, Plaintiff has suffered loss and damage in an amount in excess of $150,000.00, exclusive of interest and costs.

### A.     Breach of Contract

21.     Plaintiff incorporates by reference herein the facts and allegations contained in the foregoing paragraphs as though same were set forth herein at length.

22.     The policy covers water and windstorm/hail damage, which was the cause of the loss.

23.     Defendant retained an engineer who opined that the water damage to the property was caused by: "substandard construction;" "deteriorated sealants;" "pre-existing deficiencies;" "design/construction related deficiencies;" "substandard design/construction;" "deficient workmanship;" and "deterioration/wear and tear."

24.     While Plaintiff disagrees with the opinions of Defendant's engineer, even if Defendant's engineer's conclusions are accurate, the policy at **Part 1 F · LOSSES NOT INSURED, Paragraph 13** clearly and unambiguously states that if water damage, windstorm/hail and other "specified causes of loss" ensue as a result of any of the conditions identified by Defendant's engineer (See paragraph 23 above), then Defendant insures such resulting water damage windstorm/hail and other "specified causes of loss." See also the policy at **Part 1 C · LOSSES INSURED**, paragraph **4. SPECIFIED CAUSES OF LOSS**, which provides coverage for water damage and windstorm/hail, if resulting

from any of the conditions listed in paragraph 23 above.

25.     Therefore, Defendant's denial of Plaintiff's loss was improper and not supported by the language of the policy.

26.     Defendant's wrongful denial constitutes a breach of the policy.

27.     Defendant's wrongful denial was contrary to the reasonable expectations of Plaintiff that such a loss was covered by the policy.

28.     The policy requires that Defendant pay for all of Plaintiff's losses as set forth above in paragraphs 13 - 15, and Defendant's failure and refusal to pay constitutes a breach of the insurance contract.

29.     Although Plaintiff avers that the plain language of the policy supports coverage for its loss, in the alternative, Plaintiff submits that at the least, the applicable policy language is ambiguous and must be interpreted in Plaintiff's favor.

30.     Further, in the alternative, the policy language relied on by Defendant to deny Plaintiff's claim was subject to more than one reasonable interpretation, and therefore is ambiguous and must be construed in favor of coverage for Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of $150,000.00, exclusive of interest and costs.

**B.     Bad Faith**

31.     Plaintiff incorporates by reference herein the facts and allegations contained in the foregoing paragraphs as though same were set forth herein at length.

32.     Defendant has engaged in Bad Faith conduct toward Plaintiff and has treated Plaintiff unreasonably and unfairly with respect to its adjustment of Plaintiff's covered loss, in violation of 42 Pa.C.S.A. §8371.

33. After receiving notice of the loss, Defendant sent a claims adjuster to inspect Plaintiff's building.

34. During his inspection, Defendant's claims adjuster advised Plaintiff and/or Plaintiff's representatives that the loss was too large and complex for him to handle and that a "large loss adjuster" should be assigned by Defendant; however, according to the adjuster, Defendant had no "large loss adjuster" because the "large loss adjuster" was no longer working for Defendant.

35. Defendant never sent a "large loss adjuster" to inspect the loss. In fact, Defendant never even inspected the loss.

36. Instead, Defendant retained an engineer who spent no more than ninety (90) minutes at the property.

37. Defendant's engineer did not perform any testing whatsoever. He did not take samples of any materials for further analysis. His visit to the property consisted of nothing more than a visual inspection and the use of a drone to view the roof of the church.

38. Defendant's engineer never even inspected the basement of the property, despite being specifically told that there was significant damage to the basement.

39. It is believed, and therefore averred that Defendant sent the engineer to Plaintiff's property, not for the purpose of looking to find coverage for the loss, but rather for the purpose of trying to find any reason to deprive Plaintiff of policy benefits.

40. Even after Defendant's engineer admitted that there was damage to the copper gutters from hail (which is a loss clearly covered by the policy), Defendant, without any reasonable basis and in knowing or reckless disregard of its lack of a reasonable basis, still denied Plaintiff's claim entirely.

41.     Defendant knew or should have known its policy afforded coverage for the water and windstorm/hail damage to the property because the policy issued by Defendant clearly and unambiguously covered the loss, regardless of the alleged adverse conditions reported by Defendant's engineer.

42.     Even after Plaintiff brought to Defendant's attention the applicable policy language that supported coverage for most or all of the loss, Defendant refused to acknowledge Plaintiff's position and refused to respond to Plaintiff's point that the policy's ensuing loss provision found in the policy immediately following **Paragraph 13** of **Part 1 F · LOSSES NOT INSURED**, plainly provided coverage for all of the windstorm/hail and water damage. (See Exhibit "A").

43.     Defendant denied Plaintiff's claim without a reasonable basis and knowingly or recklessly disregarded its lack of reasonable basis when it deprived Plaintiff of policy benefits.

44.     Defendant twisted and tortured the policy language in a manner to avoid covering the loss solely to evade paying for a loss that was covered by the policy, especially considering that Plaintiff purchased "EXPANDED COVERAGE."

45.     Defendant applied its policy language to the claim in such a manner as to create ambiguity, where none exists.

46.     At best for Defendant, the relevant policy language is ambiguous, which Defendant knew or should have known was to be interpreted in Plaintiff's favor, yet it instead decided to construe it against the interests of its own insured Plaintiff.

47.     Plaintiff advised Defendant that its interpretation of the policy and denial of coverage was wrong.

48.    Plaintiff advised Defendant that the plain language of the policy supported coverage.

49.    Yet Defendant still denied the claim, refused to pay to repair the damage and deprived Plaintiff and its congregation of the use of the property, and continues to do so.

50.    Solely as a result of Defendant's bad faith misconduct as aforesaid, Plaintiff has been required to obtain counsel to commence the present action to recover benefits due and owing under the policy of insurance issued by Defendant for Plaintiff's covered loss and has incurred and will incur costs and other expenses in connection with said claim.

WHEREFORE, Plaintiff demands judgment against Defendant for punitive damages, counsel fees and costs, together with interest on Plaintiff's claim in an amount equal to the prime rate of interest plus three percent (3%), in an amount in excess of $150,000.00, exclusive of interest and costs.

**ZENSTEIN, KOVALSKY BUCKALEW, LLC**

BY: _____
　　　JOSEPH A. ZENSTEIN, ESQUIRE
　　　Attorneys for Plaintiff
　　　1240 Old York Road, Suite 101
　　　Warminster, PA 18974
　　　215-230-0800

Date: February 15, 2021